# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN A. KAFATI for Z.P.P., a minor,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:16-CV-2193-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding pro se, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (Docs. 3 and 8), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' cross-motions for summary judgment (Docs. 13 and 14).

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I.  THE DISABILITY EVALUATION PROCESS

This case involves denial of child's disability benefits following a prior determination of childhood disability. Child's Supplemental Security Income is paid to disabled persons under the age of eighteen. A child is considered disabled if the child has a medically determinable physical or mental impairment that results in marked and severe functional limitations. See 42 U.S.C. § 1382c(a)(3)(C)(I). To determine whether a child who has not yet attained age 18 remains disabled after a prior determination of disability, the Commissioner employs a three-step sequential evaluation process. See 20 C.F.R. § 416.994a(b). The sequential evaluation proceeds as follows:

> Step 1  Determination whether medical improvement has occurred with respect to impairments the claimant had at the time of the most recent determination of disability (the comparison point decision, or CPD); if not, the claimant remains disabled;
>
> Step 2  If medical improvement has occurred, and the CPD was based on impairments meeting or medically equaling impairments listed in the regulations, determination whether such impairments now meet, medically equal, or functionally equal impairments listed in the regulations; if

2

|   |   |   |
|---|---|---|
| | | so, the claimant remains disabled; |
| | | If medical improvement has occurred, and the CPD was based on functional equivalence, determination whether such impairments now functionally equal impairments listed in the regulations; if so, the claimant remains disabled; |
| | Step 3 | Determination whether the claimant now has one or more severe impairments, including any not present or considered at the time of the CPD, and, if so, determination whether any such severe impairment meets, medically equals, or functionally equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant remains disabled. |

See 20 C.F.R. § 416.994a(b).

Evaluation of a childhood disability claim does not involve determination of the claimant's residual functional capacity or consideration of vocational issues.

## II. THE COMMISSIONER'S FINDINGS

Claimant was previously found disabled as of May 1, 2008, due to cerebral palsy. See CAR 11.[1] On April 18, 2013, it was determined that claimant, who was then 6 years old, was no longer disabled as of April 1, 2013. See id. at Exhibit 1B. Plaintiff applied for a hearing on claimant's behalf and hearings were held on March 17, 2014, and July 2, 2014, before Administrative Law Judge (ALJ) Plauche F. Villere, Jr. See id. at 11. An impartial medical expert, David T. Huntley, M.D., testified at the second hearing. See id. The record was held open following the hearing and plaintiff submitted an assessment from claimant's treating physician, Dr. Chretien. See id. at Exhibit 11F. In a January 28, 2015, decision, the ALJ concluded claimant is no longer disabled based on the following relevant findings:

    1.    At the time of the prior determination, claimant had the following medically determinable impairment: cerebral palsy, an impairment found to meet Childhood Listing of Impairments, 111.07B;

    2.    Medical improvement occurred as of April 1, 2013;

///

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on December 1, 2016 (Doc. 6).

3

|   |   |   |
|---|---|---|
| | 3. | Claimant's impairment as of the time of the prior decision has not met or medically equaled Listings 111.06 or 111.07 since April 1, 2013; |
| | 4. | Claimant's impairments as of the time of the prior decision has not functionally equaled any of the Listings since April 1, 2013; |
| | 5. | Claimant has not developed any additional impairments since the prior determination; and |
| | 6. | The claimant's disability ended as of April 1, 2013. |

See id. at 14-29.

After the Appeals Council declined review of May 17, 2016, this appeal followed.

### III.  DISCUSSION

In her pro se brief, plaintiff raises the following arguments:

1. "ALJ did not take into consideration pertinent evidence in evaluating the severity in which Z.P.P. struggles with attending and completing tasks, moving and manipulating objects, and his health and physical well-being."

2. "ALJ failed to bring up Z.P.P. mental status and never addressed him being prescribed Prozac for his anxiety and outbursts and let alone how adversely the Prozac affects him."

3. "ALJ relied on Z.P.P. Kindergarten Teacher Questionnaire instead of his First Grade Questionnaire."

4. "Z.P.P. has had an abnormal MRI and abnormal EEG that was never mentioned in the ALJ Hearing Record."

5. "Z.P.P. Cerebral Palsy and the side effects from his Prozac have also made him struggle more at school, which was also not brought up in the ALJ record."

6. "The ALJ gave Dr. Chretien 'only some weight' and had given Dr. Huntley 'controlling weight' considering that he has never physically seen or examined Z.P.P."

7. "The ALJ failed to develop the complete medical record of Z.P.P. and incorporate substantial evidence."

While plaintiff does not specifically argue the matter should be remanded for consideration of new evidence, she attaches to her brief the following evidence which was not previously considered: (1) January 14, 2017, letter from Dr. Chretien, M.D.; and (2) a report from Katherine A. Redwine, Ph.D., following her October 10, 2016, evaluation.

### A. Evaluation of the Medical Opinions

At Step 2, the ALJ evaluated the medical opinions of record and determined claimant experienced medical improvement as of April 1, 2013. See CAR 15-18. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any

5

conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

In finding medical improvement, the ALJ noted:

The medical evidence supports a finding that, as of April 1, 2013, there had been a decrease in medical severity of the impairments present at the time of the CPD.

\* \* \*

First, school records show his [claimant's] motor skill level is such that he can participate with peers in motor activities and physical education activities with no modifications. He successfully is able to hop forward on each foot, balance on one foot for 4-6 seconds, perform forward roll, gallop 30 feet, run in a circle both directions within 2 inches of the line, slide 30 feet in each direction, can walk downstairs without handrails alternative feet for 4 steps, and is learning to skip. He could throw balls, bound [sic] and catch a tennis ball, kick a rolled ball, catch and toss a ball with two hands, dribble a ball. Activity age equivalence is 5 to 5.5 years; at the time of testing he is 5.5 years old. Other age appropriate motor skills are also noted. He can beat/copy/coordinate movement patters to music; do 20 sit-ups on [sic] 60 seconds, 10 wall push-ups in 20 seconds; uses a tripod grasp to write, can draw geometric forms. He is found to at age level with his motor skills. Given his age appropriate level of motor skills activity, he is discharged after one year from special education in his June 2012 Individualized Education Plan (IEP) because he no longer needed the services for adaptive physical education. The IEP of that date noted the claimant has mild cerebral palsy, been provided APE services and made significant gains, having mastered or surpassed all IEP motor goals. It also noted he displays no behavior relevant to academic functioning and no other domain of functioning preacademic/academic functional skills, communication development, social/emotional/behavioral, vocational, adaptive/daily living skills nor health are of concern (Exhibit 10E/4-8, 15).

Second, there [sic] findings upon consultative examination are limited, and show the claimant, despite them, is still able to walk and move arms and legs without significant limitation. Consulting examiner Dr. Diamond Kassam performed a pediatric examination of claimant, November 2012. Objective findings were generally within normal limits but for poor abdominal muscle tone, mild lordosis, winged scapula with poor scapula muscle tone, trouble walking heel/toe, generalized hypotonia, i.e., reduced muscle tone with slight instability of ankle joints, wearing orthotics and deep tendon reflexes 1+ (Exhibit 2F). Dr. Kassam notes the claimant plays well with other children and his activities of daily living are fairly independent.

The record includes findings upon speech and language consulting examination are that the claimant has average receptive and expressive language skills with only a mild deduction in speech intelligibility. In January 2013 consulting examiner Pauline Nash, M.S., CCC-SLP found

after evaluating and testing the claimant that his vocal parameters and pragmatic language were within normal limits (Exhibit 3F).

Third, there is no indication of abnormality of function due to his impairment observed by his kindergarten teacher. A Teacher Questionnaire, completed by teacher Mark Benson in March 2013 noted the claimant is at grade level in reading, math and written language with no unusual absenteeism. He found no problems in acquiring and using information, attending and completing tasks interacting and relating with others, moving about and manipulating objects, caring for himself, or health and physical well-being (Exhibit 11E).

Lastly, medical records at periodic evaluations of the claimant by treating sources also show no significant objective findings to support the claimant's allegation of continuing severe symptoms that severely limit age appropriate activities. These records also report physical activities within normal ranges.

Shriner Hospital physicians, Dr. Loren Davidson, a specialist in Pediatric Rehabilitative Medicine, examined the claimant in September 2012 and March 2013 for reported diagnosis of mild ataxic cerebral palsy. Physical exam findings are within normal limits but for lumbar lordosis, some scapular winging, insignificant proximal weakness, collapse of plantar arch of the foot when standing, and mild foot overpronation. He was able to heel-toe walk normally, run in the clinic, yet he had problems with single leg stance, tandem walk. Patellar tendon reflexes were hyporeflexic, no Achilles reflexes; motor strength was within normal limits. He did not appreciate any spastic catch in any muscle groups of lower extremities. He found no upper motor neuron signs, but impaired ability to perform rapid, alternating movements or dysdiadochokinesis and dysmetria/ataxia, that is, some lack of coordination of upper arms in March 2013. Dr. Davidson finds the claimant doing quite well (Exhibit 4F).

Functionally, Dr. Davidson notes being advised at the time of those visits that the claimant can walk independently, runs and jumps, but per his mother without orthotics, she notes some instability, with propensity for failing, as well and difficulty climbing playground equipment. He plays soccer with his peers. He is doing well in school (Exhibit 4F). In fact, records of Shriner's Hospital treating source Dr. Davidson finds cerebral palsy a diagnosis of exclusion, i.e., one reached by a process of elimination, as its presence cannot be established with complete confidence from examination or testing. He questions the assessment of mils ataxic cerebral palsy given the lack of upper motor neuron signs. Final office examination notes propose various tests, such as MRI, EMG/Nerve Conduction Study, even genetic testing to better evaluate the claimant's ataxia and proximal muscle weakness (Exhibit 4F). The record shows no testing has yet been conducted.

\* \* \*

Based on this evidence, medical improvement has occurred – the claimant generally has ataxia and proximal muscle weakness; however, he no longer exhibits unstable, wide-based gait with feet turned slightly out, with the left foot slightly dragging behind – dysfunction involving persistent

7

|   |   |
|---|---|
| 1 | disorganization or deficit of motor function for age involving two extremities, which (despite prescribed therapy) interferes with age-appropriate major daily activities and results in disruption of gait or station. |
| 2 | |
| 3 | |
| 4 | CAR 15-17. |

As for the opinion evidence, the ALJ gave "substantial weight" to the opinions of consultative examining physician, Dr. Kassam, and non-examining reviewing physician, Dr. David. See id. at 17. The ALJ also gave "substantial weight" to some of the opinions expressed by non-examining reviewing physician, Dr. Hanna, but gave other opinions offered by this source "little weight." See id. at 17-18. Specifically, the ALJ accepted Dr. Hanna's opinions that claimant has no limitations with respect to acquiring and using information, attending and completing tasks, caring for himself, and health and well-being, and that claimant has less than marked limitations with respect to moving about and manipulating objects. See id. at 17. The ALJ, however, rejected Dr. Hanna's opinion claimant has less than marked limitations in the domain of interacting and relating with others. See id. at 18. Regarding this opinion, the ALJ stated:

> . . .While his [claimant's] mother reports he is easily frustrated, gets angry easily, has problems with impulse control and impatience, as reviewed above there is no evidence in school or medical records that he has any issues socially or with behavior. This element of his [Dr. Hanna's] opinion is also inconsistent with the opinions of Drs. Kassam and David.

Id.

Plaintiff contends:

> Relevant testimony at the hearing was a Medical and Functional Capacity Assessment and Statement from Z.P.P.'s Neurologist, Dr. Chretien who has been the treating physician since Z.P.P. was an infant and continues to see him 3-4 times a year for his Cerebral Palsy. The ALJ gave Dr. Chretien "only some weight" and had given Dr. Huntley "controlling weight" considering that he has never physically seen or examined Z.P.P. . . .

/ / /

/ / /

/ / /

/ / /

8

1. Dr. Chretien

The ALJ discussed Dr. Chretien's opinions in concluding claimant experienced medical improvement as of April 1, 2013. See CAR 15. Specifically, the ALJ noted Dr. Chretien's opinions formed the basis of the CPD in this case:

> At the time of the Comparison Point Decision (CPD), the claimant was diagnosed with mild cerebral palsy, and had significant walking difficulty. A neurologic summary from treating pediatric neurologist Dr. Paul Chretien, May 2008, noted the claimant walked with a pronated, spastic, wide based gait. He was unable to stoop and recover. Dr. Chretien found he had gross motor delays consistent with spastic cerebral palsy. . . .
>
> Id.

In the context of the current decision, the ALJ also considered Dr. Chretien's more recent observations:

> In September 2012 and April 2013 pediatric neurologist Dr. Chretien noted only decreased tone in his [claimant's] lower extremities, fidgety or busy with good eye contact, and encouraged continuing gymnastics (Exhibit 1F/3 and 6F/3).
>
> Id. at 17.

As to the doctor's more recent opinions, the ALJ stated:

> Little weight is accorded to the opinion of long-term treating source, pediatric neurologist Dr. Chretien. He opined in February 2014 that the claimant [has] moderate impairment in acquiring and using information. He found marked impairment in interacting and relating with others and caring for himself. He found the claimant faced extreme impairment in attending and completing tasks, moving about and manipulating objects, and health and physical well-being (Exhibit 11F).
>
> Generally controlling weight is given the opinions of treating sources where well-supported, and not inconsistent with the substantial evidence of record (citations to the regulations omitted). However, Dr. Chretien's opinion is inconsistent with the evidence showing he [claimant] no longer qualified for services of special education for adaptive physical education, having been provided such which enabled him to master or surpass all IEP motor goals, enabling him to participate with peers in motor activities and physical education activities with no modifications. It is inconsistent with the evaluation of his kindergarten teacher finding he faces no significant problems in all functional domains. It is inconsistent with the findings of consulting examiner Dr. Kassam who found the claimant operating within normal limits in every functional domain, but for slightly compromised motor skills (Exhibit 2F). It is inconsistent with speech and language consulting examiner Ms. Nash who found the claimant had average receptive and expressive language skills with only a mild reduction in

9

speech intelligibility. And his opinion is unsupported by his own medical records where objective findings as reviewed above do not support the extreme limitations opined.

CAR 22-23.

The ALJ also commented on letters Dr. Chretien sent in July 2013 and November 2013:

> Dr. Chrieten [sic]. . .sent letters in July and November 2013 diagnosing the claimant with cerebral palsy with spastic diplegia (a chronic neuromuscular condition of hypertonia and spasticity) who wears AFOs [ankle and foot orthoses] for stability due to low trunk tone, and on Abilify for mood and behavioral stability (Exhibit 9F). The undersigned notes the record contains no diagnosis of a mental impairment, but treatment for emotionalism arising from cerebral palsy. Dr. Chrieten [sic] notes indicate the claimant is in need of physical and behavioral therapy due to cerebral palsy. He states even though on Zoloft, he continues to pull out his hair, is wearing new AFOs (11/2013) due ankle instability, balance and coordination progressively worsening as he gets taller and heavier, with worsening aggressive outbursts and constant hair pulling. He states he requires re-assessment through Alta Regional (Exhibit 9F and 10F). The record shows no evidence on an Alta Regional assessment.
>
> These statements by long term treating source Dr. Chrieten [sic] are a recitation of the claimant's condition, which includes behavioral/emotional issues, and asserts progressively worsening ankle instability and coordination issues. As noted, no medical records nor educational records would support a statement that the claimant has progressively worsening instability or coordination. The undersigned also finds that Dr. Chrieten's [sic] letters do not articulate any functional limitations on the claimant's performance of age-appropriate activities, and is at most an opinion of the claimant's current medical state. In this regard it is balances with the doctors [sic] own treatment record findings, those of Dr. Davidson, and evaluating consultant Dr. Kassam and found inconsistent and unsupported. Assessing no functional limitations the undersigned will not accord any weight to it for purposes of medical opinion evaluation.

CAR 23.

Contrary to plaintiff's assertion, the ALJ did not give Dr. Chretien's opinions "only some weight." Rather, the ALJ gave Dr. Chretien's February 2014 opinion "little weight" and accorded no weight to the doctor's July and November 2013 letters. See CAR 22, 23. Regarding the ALJ's evaluation of Dr. Chretien's opinions, plaintiff has not alleged any specific error and the court finds none. The ALJ may discount a doctor's opinion which is, as here, minimally supported by the evidence of record. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751. Dr. Chretien opined in February 2014 as to marked and extreme

10

impairments.  See CAR 22 (citing Exhibit 11F).  These opinions, however, are not supported by the other medical evidence, specifically, evidence that claimant no longer qualified for adaptive physical education, and the evidence of Dr. Kassam's opinion, Ms. Nash's opinion, as well as Dr. Chretien's own objective findings.

### 2. Dr. Huntley

Dr. Huntley testified at the July 2, 2014, hearing as an impartial medical expert. Notably, the doctor testified as follows in response to questioning by the ALJ:

> Q: Okay.  So, my question to you does he [claimant] – as far as you know, do you think he still meets the listing, or not?
>
> A: You know, I can't say.  I don't have any functional evidence.
>
> Q: Right.
>
> A: To say.
>
> Q: One way or other.
>
> A: Yeah.  And from what I get from the orthopods it doesn't seem to be marked.

CAR 75.

The kernel of plaintiff's argument with respect to the ALJ's evaluation of the medical opinion evidence is her claim the ALJ erred by giving Dr. Huntley's opinions "controlling weight" while discounting the opinions of treating source, Dr. Chretien.  This argument is unpersuasive because, as the testimony reveals, Dr. Huntley did not express any functional opinions.

**B.** **Analysis of the Domains of Functioning**

As Step 2 and Step 3, the ALJ determined whether claimant has an impairment that functionally equals an impairment listed in the regulations.  See CAR 24-29.  In making this determination, the ALJ was required to consider claimant's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) self-care; and (6) health and physical well-being.  See 20 C.F.R. § 416.926a(c).  To functionally equal a listed impairment, a

11

claimant must have "marked" limitations in two domains or an "extreme" limitation in one domain.  See 20 C.F.R. § 416.926a(c).

Regarding the domain of acquiring and using information, the ALJ stated:

> This domain considers how well a child is able to acquire or learn information, and how well a child uses the information he has learned (20 CFR 416.926a(g)).

CAR 24.

For the domain of attending and completing tasks, the ALJ stated:

> This domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the pace at which he performs activities and the ease of changing activities (20 CFR 416.926a(h)).

Id. at 25.

As to both domains, the ALJ concluded:

> . . .While the claimant has alleged emotional instability as a part of his symptoms of cerebral palsy, IEP records show his impairment is not related to academic functioning and that were no concerns with regard to academics.  His teacher found the claimant faces no limitations in acquiring and using information and that he is academically at grade level in reading, math and writing (Exhibit 10E/4-6, 32 and 11E).

Id. at 24, 25.

For the domain of interacting and relating with others, the ALJ stated:

> This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others (20 CFR 416.926a(i)).
>
> * * *
>
> . . . While the claimant has alleged emotional instability as a part of his symptoms of cerebral palsy, IEP records reflect social/emotional/behavioral and communication development are not areas of concerns.  His teacher reports no problems in interacting and relating with others (Exhibit 10E/4-7, 32 and 11E).

Id. at 25-26.

/ / /

/ / /

12

As to moving about and manipulating objects, the ALJ stated:

> This domain considers how well a child is able to move his body from one place to another and how a child moves and manipulates objects. These are called gross and fine motor skills (20 CFR 416.926a(j)(2)(iv)).
>
> * * *
>
> . . .School records show the claimant was exited from special education in the June 2012 Individualized Education Plan (IEP) because he no longer needed the services of special education for adaptive physical education. The IEP noted the claimant has been provided APE services and made significant gains, having mastered or surpasses all IEP motor goals. His motor skill level is such that he can participate with peers in motor activities and physical education activities with no modifications (Exhibit 10E/4-8, 15). However medical records repeatedly note ataxia, decrease in muscle tone, and he is prescribed orthotics for balance and stability, hence the undersigned finds the claimant with less than a marked limitation in moving about and manipulating objects.

CAR 26-27.

With respect to self-care, the ALJ stated:

> This domain considers how well a child maintains a healthy emotion and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways. This includes how the child copes with stress and changes in the environment and whether the child takes care of his own health, possessions, and living area (20 CFR 416.926a(k)).
>
> * * *
>
> . . .While the claimant has alleged motor dysfunction, reduced muscle tone, wearing AFOs and emotional instability as part of his symptoms of cerebral palsy which might affect the capacity to care for himself, IEP records reflect adaptive/daily living skills are not area of concern, his teacher reports no problems, medical record and the claimant's own testimony show no significant limitation in this area of functioning (Exhibit 10E/7, 32, 11E, 4F, 6F).

Id. at 27-28.

Finally, as to health and physical well-being, the ALJ stated:

> This domain considers the cumulative physical effects and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects (20 CFR 416.929a(1)).
>
> * * *

///

13

> . . .While the claimant has alleged motor dysfunction, reduced muscle tone, wearing AFOs and emotional instability as part of his symptoms of cerebral palsy which might affect his health and physical well-being, IEP records reflect health is not an area of concern, his father reports no problems, medical records and the claimant's own testimony show no significant limitations in this area of functioning (Exhibit 10E/7, 32, 11E, 1F, 4F, 6F).

CAR 28.

Plaintiff argues the ALJ failed to consider relevant evidence in making these findings. According to plaintiff:

> The ALJ's conclusion was not supported by substantial evidence and the complete and whole medical record of Z.P.P. ALJ did not take into consideration pertinent evidence in evaluating the severity in which Z.P.P. struggles with attending and completing tasks, moving and manipulating objects, and his health and physical well-being. The ALJ failed to bring up Z.P.P. mental status and never addressed him being prescribed Prozac for his anxiety and outbursts and let alone how adversely the Prozac affects him. ALJ relied on Z.P.P. Kindergarten Teacher Questionnaire instead of his First Grade Questionnaire. Z.P.P. was only in school half a day in Kindergarten vs. full day in First Grade, which is when Z.P.P. First Grade Teacher documented him having problems in the domains of his physical and mental struggles in First Grande attending and completing tasks and manipulating objects. Z.P.P. has had an abnormal MRI and abnormal EEG that was never mentioned in the ALJ Hearing Record. . . .

1. <u>Mental Impairments and Side Effects of Prozac</u>

Plaintiff asserts the ALJ erred by failing to discuss claimant's mental status or mention adverse side effects of Prozac. The court does not agree. A review of the hearing decision reflects the ALJ did in fact consider mental impairments and found the evidence failed to establish limitations with respect to such impairments. Additionally, while the ALJ noted claimant has been prescribed Zoloft, the court cannot identify any record showing claimant was prescribed Prozac. In any event, as the ALJ noted, there is no evidence claimant experiences limitations, let alone marked or extreme limitations, as a result of adverse side effects of medications. Moreover, evidence a claimant has been prescribed medication, without more, does not establish disability. See <u>Matthews v. Shalala</u>, 10 F.3d 678, 680 (9th Cir. 1993).

/ / /

/ / /

/ / /

### 2. Questionnaire from First Grade Teacher

Next, plaintiff argues the ALJ erred by failing to consider statements by claimant's first grade teacher, L. Hadley. The first grade teacher's March 11, 2014, evaluation is included in the record as Exhibit 16E. See CAR 340-47. In the domain of acquiring and using information, the teacher noted at most slight problems. See id. at 341. While the teacher noted a "very serious problem" in claimant's ability to organize, as to attending and completing tasks the teacher stated overall claimant is "very typical for his age." Id. at 342. The teacher noted no problems with interacting and relating with others, self-care, or health and well-being. See id. at 343, 345-46. As to moving about and manipulating objects, the teacher stated "[f]ine motor skills are a concern," but did not note any marked or extreme limitations in this domain. Id. at 344.

This evidence does not support plaintiff's assertion claimant remains disabled. Even if the ALJ erred by not considering the report from claimant's first grade teacher, the error is harmless because no reasonable ALJ could have reached a different conclusion regarding disability had the error not occurred. See Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006).

### 3. MRI and EEG Testing

Finally, plaintiff contends the ALJ erred by failing to consider evidence of "abnormal" EEG and MRI tests. The court does not agree. As with evidence claimant has been prescribed medication, evidence of abnormal diagnostic test results does not establish disability absent a link between such evidence and limitations on functional capacity. See Matthews, 10 F.3d at 680.

## C. Duty to Develop the Record

The ALJ has an independent duty to fully and fairly develop the record and assure the claimant's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. See id. This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence or the ALJ's own finding that

the record is inadequate triggers this duty. See Tonapetyan, 242 F.3d at 1150. The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

Plaintiff asserts:

> The ALJ failed to develop the complete medical record of Z.P.P. and incorporate substantial evidence. The Administrative Record could not support a conclusion, since it was not complete and whole. The opinions of Dr. Chretien, Z.P.P. treating neurologist, were given "only some weight" and "the controlling weight" was given to Dr. Huntley, who has never examined or physically seen Z.P.P. . . .

Plaintiff's reference to the ALJ's consideration of the medical opinions, discussed in detail above, does not establish any ambiguity which would have triggered the ALJ's duty to further develop the record.

### D. **Remand for Consideration of New Evidence**

A case may be remanded to the agency for the consideration of new evidence if the evidence is material and good cause exists for the absence of the evidence from the prior record. See Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. 1987) (citing 42 U.S.C. § 405(g)). In order for new evidence to be "material," the court must find that, had the agency considered this evidence, the decision might have been different. See Clem v. Sullivan, 894 F.2d 328, 332 (9th Cir. 1990). The court need only find a reasonable possibility that the new evidence would have changed the outcome of the case. See Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984). The new evidence, however, must be probative of the claimant's condition as it existed at or before the time of the disability hearing. See Sanchez 812 F.2d at 511 (citing 42 U.S.C. § 416(i)(2)(G)). In Sanchez, the court concluded that the new evidence in question was not material because it indicated "at most, mental deterioration after the hearing, which would be material to a new application, but not probative of his condition at the hearing." Id. at 512 (citing Ward v. Schweiker, 686 F.2d 762, 765-66 (9th Cir. 1982)).

In this case, plaintiff appears to assert the matter should be remanded for consideration of new evidence, specifically a January 14, 2017, letter from Dr. Chretien and a report from Katherine A. Redwine, Ph.D., following her October 10, 2016, evaluation of claimant. This new evidence, however, is not material because it is not probative of claimant's condition as it existed at or before the hearing in this case, which was held on March 17, 2014. The new evidence, submitted after the ALJ's decision was issued on January 28, 2015, may be relevant to a new application. A remand for consideration of Dr. Chretien's letter and Dr. Redwine's report in the context of the current determination is not warranted.

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 13) is denied;
2. Defendant's motion for summary judgment (Doc. 14) is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: September 27, 2018

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE